ATLANTA PAPER CO. *v.* JACKSONVILLE PAPER CO.

No. 11595. MARCH 16, 1937. REHEARING DENIED MARCH 25, 27, 1937.

*Harold Hirsch, Marion Smith, Ernest P. Rogers,* and *Adams, Adams & Douglas,* for plaintiff.

*Abrahams, Bouhan, Atkinson & Lawrence,* and *Kay, Ragland & Kurz,* for defendant.

ATKINSON, Justice. The Atlanta Paper Company, duly incorporated, brought suit against the Jacksonville Paper Company, trading as Atlantic Paper Company, seeking to enjoin the defendant "from trading under the name Atlantic Paper Company or any other name identical to or confusingly similar to petitioner's name, . . or in any way colorably imitating the name of petitioner, and . . from passing off its corporate name as the name of your petitioner." A temporary injunction was granted. At the final trial the parties presented certain questions to be answered by special verdict of the jury. After introduction of evidence and charge of the court, a verdict was returned, making answer to the questions so propounded. The plaintiff moved, on the basis of the pleadings and findings of fact by the jury, to enter a decree in its favor. The motion was overruled, and the movant excepted pendente lite. The court entered a final decree based

on the verdict, directing that the temporary injunction be dissolved, and that a permanent injunction be denied. The plaintiff's motion for new trial was overruled, and it excepted. Error is assigned also on the exceptions pendente lite. In the petition it is alleged that the Atlanta Paper Company has for a number of years maintained its sole office and manufacturing plant in the City of Atlanta, from which it sells throughout several named States, including sales in the City of Savannah and surrounding territory, the products of its manufacture, consisting of "paper bags, folding boxes, corrugated boxes, and other products of paper conversion;" also "wrapping paper, toilet paper, twine, and many other items;" that the Jacksonville Paper Company, the manufacturing plant and principal office of which are located in Jacksonville, Florida, has engaged in the manufacture of the same class of goods, and other goods made of paper, and is selling them in the same territory; and that the Jacksonville Paper Company has recently established a branch office in Savannah, Georgia, under the trade-name Atlantic Paper Company, from which it sells goods. It is the use of this trade-name in the business which the Atlanta Paper Company seeks to enjoin. The alleged grounds of relief are that the plaintiff, by carrying on business at great expense, has established a valuable trade and good will under the name of Atlanta Paper Company, whereby "its products are known as products of a superior quality" of the Atlanta Paper Company, and consequently Atlanta Paper Company has obtained a secondary meaning denoting that the products sold under that name are the products of the petitioner; that the name Atlantic Paper Company is so similar to Atlanta Paper Company that its use by defendant in carrying on the same kind of business in the same territory is calculated to deceive ordinary purchasers desiring petitioner's products, and to divert and does divert trade rightfully belonging to petitioner; that the use of such name causes great confusion, in that many letters and other forms of mail are being addressed to petitioner as Atlantic Paper Company, Atlanta, Georgia, and letters are being addressed to defendant as the Atlanta Paper Company, Savannah, Georgia, whereby petitioner is being deprived of the benefit of the reputation acquired by its high character and popularity among purchasers throughout the district, causing irreparable damage;

that defendant's use of said trade-name Atlantic Paper Company is thus misleading to the public, causing purchasers of defendant's products to think they are dealing with petitioner; and that such deceptive conduct is unfair trade and unfair competition, and is a fraud upon the public and upon petitioner, injuring the good will established by petitioner and causing irreparable loss.

In its answer the defendant admits establishment of a branch office in Savannah, where it maintains a warehouse and an office. It further alleges that through that office it sells "not only products of a nature similar to those sold by petitioner, to wit: paper bags, boxes, and wrapping paper, but it also sells . . many other classes of paper goods which petitioner does not sell;" that all of the products sold by the defendant "bear distinctive trade-marks, trade-names, and other designations;" . that "the merchandise handled by the petitioner is likewise distinguished by different trade-marks, trade-names, and designations which are not similar to the trade-marks, trade-names, and designations of defendant's products;" that "one of defendant's largest lines . . consists of what is known as fine paper, which is used for printing purposes of various kinds and character in the stationery trade, for printers' supplies, lithographers, and general printing and stationery requirements. This class of business is entirely different from that solicited in many instances in the sale of coarser papers. One of the fine paper products vended by defendant is a bond paper manufactured by the Eastern Manufacturing Company of Bangor, Maine, and known as 'Atlantic Bond,' which deservedly enjoys a high reputation in the printing and stationery trade. None of the products sold by it are sold under the name of Atlanta Paper Company, nor are any of its products by name, dress, form, or package, watermark or tag, labeled with the name 'Atlanta' or 'Atlanta Paper Company.'"

In the answer it is alleged: "That the plaintiff maintains its office in Atlanta, Georgia, from which point it vends . . coarse paper and coarse paper products through traveling salesmen and like solicitation; that it does not now, nor never has, maintained in Savannah, Georgia, or adjacent territory, a warehouse, office, agent, or agency for the prompt, efficient, and quick supply of coarse paper; that it does not sell fine paper for use of stationers, printers, and lithographers, but attempts to serve its customers

through deliveries made by carriers either from Atlanta, Georgia, or manufacturing centers in north and northeast. Realizing the growing importance of Savannah as a business center, this defendant entered the field of commercial activities in the City · of Savannah, established an office . . and . . warehouse, . . employs a force of . . employees, and solicits and vends its products in the City of Savannah through a force of salesmen operating from that point in Savannah and through adjacent territory; that by reason thereof it is enabled to make quick, prompt, and satisfactory deliveries at competitive prices, handling both fine and coarse papers, and by reason thereof it has become an active factor in business competition in this territory; that among the brands of fine paper carried by defendant and vended by it is one which has a high standing in the printing, stationery, and commercial world, and known as 'Atlantic Bond,' which is a registered brand of paper manufactured by the Eastern Manufacturing Company of Bangor, Maine, which paper defendant distributes in large quantities, and for which there is a constant demand by reason of its excellence. In locating its branch office in Savannah, Georgia, defendant trades under the name of Atlantic Paper Company, thereby popularizing the brand of paper which is one of its largest sellers, and at the same time indicating the location of · its office near the Atlantic Ocean. Defendant denies that it ever intended to confuse customers by a similarity of names; it avers that there is a distinct dissimilarity between the names of Atlanta and Atlantic; that it could enjoy no benefit by the use of the name Atlanta, which has no trade significance in either the coarse or fine paper business. . . Defendant avers that it has invested thousands of dollars in the establishment of its business in Savannah, Georgia. It has built up a good will and popularity under the name of Atlantic Paper Company, which it deservedly enjoys; and that having invested its money it has acquired a property right in the name and good will, which can not be changed without irreparable loss; that it has never misrepresented its products as being those sold by the Atlanta Paper Company, of Atlanta, Georgia, or sought so to do; that Atlanta, Georgia, and Savannah, Georgia, are distant approximating 300 miles, and there is no reason for confusion in the addressing of mail intended for those respective different destinations; that any

mistakes which have occurred in the addressing of such mail are such as can not be guarded against by ordinary care, and, being only occasional and at rare intervals, are inconsequential."

The questions propounded, with the answers returned in the special verdict, follow: By the plaintiff. "1. Has the corporate title of the plaintiff, Atlanta Paper Company, through long use in the Southeastern States, come to indicate or designate the plaintiff? Yes. 2. Is the name Atlanta Paper Company the corporate name of the plaintiff? Yes. 3. Is the trade-name Atlantic Paper Company assumed by the defendant, Jacksonville Paper Company, confusingly similar to the corporate name Atlanta Paper Company of plaintiff? No." By the defendant. "1. Is there such a similarity in the name of Atlanta Paper Company and Atlantic Paper Company as that the ordinarily prudent purchaser, in the exercise of ordinary care, is likely to be misled thereby? No. 2. Have the products sold by the Atlanta Paper Company acquired any special significance or connection with the use of the name Atlanta No. 3. Was there any intention on the part of the defendant, Jacksonville Paper Company, in using the name of Atlantic Paper Company in operating its business at Savannah, Georgia, to compete with the Atlanta Paper Company by the use of a name so as to deceive the ordinary purchaser in the exercise of ordinary prudence and mislead such purchaser into purchasing its products under the impression that it was trading with the Atlanta Paper Company? No." ' Other facts will sufficiently appear hereinafter.

■ The pleadings in this case show an issue as to fraudulent simulation of the plaintiff's name and business by the defendant in the same territory, thus bringing about unfair competition, causing damage to plaintiff's pre-established business and good will. On this phase of the case it was not error to admit, over plaintiff's objection as irrelevant, evidence (a) "that the Atlanta Paper Company sells some of its paper bags under the trade-marks 'Stone Mountain' and 'Piedmont;'" (b) "that the Atlantic Paper Company markets and sells some of its paper bags under the trade-marks 'Waha,' 'Purity,' and 'Leak Pruf.'"

■ This suit was brought to restrain the use by the defendant of a trade-name adopted by it, alleging that such name is similar to the corporate name of the plaintiff; that plaintiff and defendant

were competitors, but plaintiff had entered, prior to defendant, upon the territory named and sold its products there under its corporate name; that such similarity has resulted and will continue to result in confusion between the two names, and is calculated to mislead and deceive ordinary purchasers of plaintiff's products and the general public, they being likely to think that they are dealing with the plaintiff; that such misleading and deceptive conduct is a fraud upon the public and upon plaintiff; that defendant intends and will continue to use such trade-name; that such conduct of defendant constitutes "unfair trade and unfair competition" against plaintiff, by which defendant is profiting, and will cause the goods of the defendant to be "palmed off as the merchandise manufactured by" plaintiff; and that the plaintiff by long user, acquired exclusive right to the use of the geographical term "Atlanta" in its corporate name, under the doctrine of secondary meaning. The principles governing the law of unfair competition and cases involving similar trade and corporate names, and the wrongful use thereof, have been laid down by the decisions of this court, to which reference is made. *Larrabee* v. *Lewis*, 67 *Ga.* 561 (44 Am. R. 735) ; *National Brands Stores Inc.* v. *Muse & Associates*, 183 *Ga.* 88 (187 S. E. 84) ; *Goldberg* v. *Goldberg*, 159 *Ga.* 761 (126 S. E. 823) ; *Saunders System Atlanta Co.* v. *Drive It Yourself Co.*, 158 *Ga.* 1 (123 S. E. 132) ; *Industrial Investment Co.* v. *Mitchell*, 164 *Ga.* 437 (138 S. E. 908) ; *Carter* v. *Carter Electric Co.*, 156 *Ga.* 297 (119 S. E. 737) ; *Foster* v. *Blood Balm Co.*, 77 *Ga.* 216 (3 S. E. 284) ; *Lies* v. *Daniel*, 82 *Ga.* 272 (8 S. E. 432) ; *Creswill* v. *Knights of Pythias*, 133 *Ga.* 837 (67 S. E. 188, 134 Am. St. R. 231, 18 Ann. Cas. 453) ; *Lane* v. *Evening Star Society*, 120 *Ga.* 355 (47 S. E. 951) ; *Rome Machine &c. Co.* v. *Davis Foundry &c. Co.*, 135 *Ga.* 17 (68 S. E. 800) ; *Emory* v. *Odd Fellows*, 140 *Ga.* 423 (78 S. E. 922) ; *Whitley Grocery Co.* v. *McCaw Mfg. Co.*, 105 *Ga.* 839 (32 S. E. 113) ; *Independent Order &c.* v. *Mack*, 139 *Ga.* 835 (78 S. E. 336). In fact, in *Carter* v. *Carter Electric Co.*, supra, the court held that "Every man has the right to use his own name reasonably and honestly in every way whether in a firm or corporation." It is provided by statute in this State that "Any attempt to encroach upon the business of a trader, or other person, by the use of similar trade-marks, names, or devices, with the intention of deceiving

and misleading the public, is a fraud for which equity will grant relief." Code, § 37-712. So, in passing upon the questions involved in this case, this statute must be borne in mind. This is especially true in dealing with the question of intent and fraud. Generally there seems to be some doubt as to whether it is necessary that there be a fraudulent intent shown in order for one to obtain an injunction against the use of a geographical term in the trade-name of another that is similar to a geographical term used in connection with its corporate name, and to which it alleges that it has acquired a secondary meaning in so far as its business is concerned. See generally 63 C. J. 403. However, in this State our statute must govern. In *Larrabee* v. *Lewis,* supra, this court held: "In Georgia, to have a word or words claimed as a trade-mark protected by injunction from use by another, it should appear that the defendant's use of them was with intent to deceive or mislead the public." In the opinion it was stated, in reference to the ground of demurrer that there was no allegation in the petition that the word was used "with the intent to deceive or mislead the public," that, "without reference to what may have been ruled in other States on this subject, our statute makes the intention to deceive and mislead the public, by the use of similar trade-marks, names, or devices to encroach upon the business of another, a fraud for which equity will grant relief." See also *Whitley Grocery Co.* v. *McCaw Mfg. Co., Foster* v. *Blood Balm Co.,* and *Lies* v. *Daniel,* supra.

It is also necessary to remember, in dealing with this case, that the general purpose of the law controlling trade-names and unfair competition is the prevention of fraudulent interference with rights of the lawful holder of a trade-name and protection of the public from imposition. Relief against unfair competition by the use of trade-names really rests on the deceit or fraud which the later comer into the field is practicing upon the earlier comer and on the public. The principle on which courts of equity proceed in restraining the simulation of names is not that there is property acquired by one party in the name, but to prevent fraud and deception in dealing with the party charged with the simulation of a name used by another in a similar business or manufacture. Unfair competition is a form of unlawful business injury. It consists in passing off or attempting to pass off on the public the

goods or business of one person as and for the goods or business of another. It consists essentially in the conduct of a trade or business in such a manner that there is either an express or implied representation to that effect. In fact, it may be stated broadly that any conduct the nature and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for the goods or business of another constitutes actionable unfair competition. The essence thereof consists in the sale of the goods of one manufacturer or vendor for those of another. It is the palming off by one of his goods as the goods of another, and nothing less than conduct tending to pass off one man's goods or business as the goods or business of another will constitute unfair competition. The basic principle of the law of unfair competition is that no one has a right to dress up his goods or business or otherwise represent the same in such manner as to deceive an intending purchaser and induce him to believe he is buying the goods of another, and that no one has a right to avail himself of another's favorable reputation in order to sell his own goods. The present tendency is to decide every case on the ground of unfair competition, by making the decision turn on whether or not the effect of what was done is to pass off the goods or business of one man as the goods or business of another. Unless it appears that there is or will probably be a deception of ordinary buyers and the general public into thinking that the goods or business of one is the business or goods of another, and thus bring about the sale of one man's goods as the goods of the other, the case is damnum absque injuria, for which no action lies. See 63 C. J. 322 et seq.

■ Under the law laid down by the foregoing authorities and under the facts of this case, the judge's refusal to enter a decree in favor of the plaintiff was not erroneous.

■ The charge of the court was taken largely from decisions of this court cited above, and as a whole it was correct and fairly presented the questions and issues raised. None of the assignments of error on the charge show any ground for reversal. The charges complained of and the criticisms urged are substantially as follows: Ground 8 complains of the following charge: "An infringement of a real name or trade-name of a person or corporation is such a colorful imitation thereof that the general public,

in the exercise of ordinary care might think that it is the name of the individual or corporation first appropriating the same; and the use of such name is a fraud against the person entitled to use the same, when the infringer intends to create the impression in the minds of the public that he and the person or corporation first appropriating the name are the same." The criticism is "that said charge was erroneous, . . . for the reason . . that where one appropriates to his own use the same trade-name previously used by another, or a trade-name similar thereto, such conduct constitutes unfair competition or fraud, and the fact that such appropriator . . did not intend thereby to create the impression in the minds of the public that he and the person . . first appropriating the name are the same is immaterial; . . that such charge was erroneous . . for the reason . . that it was confusing and misleading to the jury, in that it compelled them to consider the intent of defendant in appropriating and using the name 'Atlantic Paper Company,' and it made the principal issue in the case (similarity of 'Atlanta Paper Company' and 'Atlantic Paper Company') depend upon the intent with which defendant appropriated and used the trade name 'Atlantic Paper Company;' when as a matter of law and fact . . the names are similar if there is such a resemblance in sound or appearance that the public is likely to be confused between them, and the defendant's intent can not make dissimilar names similar nor similar names dissimilar."

Ground 9, of the following charge: "The duty is imposed upon every manufacturer or vendor, especially when he enters upon a field previously occupied by his competitor, to so distinguish the articles he makes or the goods he sells from those of his rival that neither their names nor their address will be likely to deceive the public or to mislead the ordinary buyer into purchasing his goods as those of his competitors, or create confusion in the trade between the rival articles." The criticism is "that such charge was erroneous . . for the reason . . that it was confusing and misleading to the jury, in that emphasis was thereby placed upon the similarity or distinction between the merchandise of the parties, and . . tended to mislead the jury to conclude that if there were no similarity between the dress or markings of the merchandise of defendant and movant, unfair competition by de-

fendant's simulation of movant's corporate title could not be found, when as a matter of law and fact . . the similarity or distinction between the dress of the merchandise of the parties has no bearing upon the similarity of defendant's trade-name and movant's corporate title."

Ground 10, of the following charge: "I charge you that unfair competition is a question of fact; and no inflexible rule can be laid down as to what conduct will constitute it. If the defendant, as a matter of fact, by his conduct is passing off his goods as the plaintiff's goods, or his business as the plaintiff's business, a case of unfair competition is made. The test is whether the public is likely to be deceived. I charge you, of course, gentlemen of the jury, unless that fact is established by evidence, then in that particular instance a case would not be made out." The criticism is "that such charge was erroneous . . for the reason . . that it specifically charged that the actual passing off by defendant of its goods or business for the goods or business of movant was essential to the charge of unfair competition; and that unless that fact was established by evidence, a case of unfair competition by defendant's simulation of movant's corporate title would not be made out."

Ground 11 complains of the following charge: "I charge you, gentlemen of the jury, that a corporation has the right to adopt a name other than its corporate name as a trade-name under which to do business, provided the name so adopted does not so closely resemble the name of another person or corporation engaged in like business as to cause persons trading with one·such corporation to believe the goods of one to be the goods of the other." The criticism is "that such charge was erroneous . . for the reason . . that the charge of unfair competition by defendant's simulation of movant's corporate title was made to depend upon the likelihood of the merchandise of defendant being confused with the merchandise of movant, when the real basis in law for such charge respecting the use of corporate name is . . the likelihood of one corporation being confused with the other; and it is not essential, as charged, that the goods of one must be believed to be the goods of the other, . . [and] it tended to confuse and mislead the jury into the . . belief that the similarity of the dress and markings of defendant's merchandise

must have been identical with or similar to the dress and markings of movant's merchandise, before similarity could be found between the trade-name of defendant and the corporate title of movant, and that the similarity or dissimilarity of the dress and markings of such merchandise was an issue in the case."

Ground 12, of the following charge: "I charge you further, that, in order to find a special verdict in answer to the questions for the plaintiff in this case, the jury must find that under the evidence shown the use of the name 'Atlantic' by the defendant in connection with its business is likely to mislead purchasers of ordinary caution and prudence." The criticism is "that such charge was erroneous . . for the reason . . that the court made it incumbent upon the jury to compare the movant's corporate title 'Atlanta Paper Company' with only the one word 'Atlantic' taken from defendant's trade-name 'Atlantic Paper Company,' and to find that 'Atlanta Paper Company' and 'Atlantic Paper Company' were dissimilar if defendant's use of the mere word 'Atlantic' was unlikely to mislead purchasers of ordinary caution and prudence. The questions submitted by plaintiff for special findings by the jury, and to which the court referred in the above charge, were as follows:

'Has the corporate title of the plaintiff, "Atlanta Paper Company," through long use in the Southeastern States, come to indicate or designate the plaintiff?' 'Is the name "Atlanta Paper Company" the corporate name of the plaintiff?' 'Is the trade-name "Atlantic Paper Company" assumed by the defendant, Jacksonville Paper Company, confusingly similar to the corporate name "Atlanta Paper Company" of plaintiff?' And that it was . . erroneous and injurious to movant for the court to give said instructions in charge to the jury, since . . in none of said questions submitted by movant, nor in the pleadings, was the question of similarity between movant's corporate name and the mere word 'Atlantic' presented as an issue, and . . such charge tended to confuse and mislead the jury into the erroneous conclusion that if 'Atlanta Paper Company' were not similar to the mere word 'Atlantic,' similarity between 'Atlanta Paper Company,' the corporate title of movant, and 'Atlantic Paper Company,' the trade-name of defendant, could not be found."

Ground 13 complains of the following charge: "I charge you

that mere confusion in mail between the two parties would not alone be sufficient to authorize you to find for the plaintiff, unless you also find that under all of the evidence purchasers of the products of the parties to this case would be likely, in the exercise of ordinary faculties for observation, to be deceived into purchasing the goods of the defendant as the goods of the plaintiff." The criticism is "that said charge was erroneous . . for the reason . . that it made the issue of similarity between defendant's trade-name and movant's corporate title depend upon the likelihood of defendant's merchandise being confused with or passed off as the merchandise of movant, when . . the real basis in law and fact for such similarity was the likelihood of defendant's business or acts being confused with the business or acts of movant, . . [and] it was confusing and misleading to the jury, in that it tended to create in the minds of the jury the erroneous impression that there must be a likelihood of confusion or deception between the actual goods of the parties, for there to be likelihood of confusion between the two corporations themselves, and consequent similarity between their corporate or trade-names."

Ground 14 complains of the following charge: "I charge you further that greater similarity is allowed in the use of geographical names than in the use of arbitrary or fanciful names; and in determining whether there is such a similarity as would mislead an ordinarily prudent man into buying the products of the defendant in the belief that they are the products of the plaintiff, you may take into consideration the fact that the names here involved are geographical names." The criticism is "that said charge was erroneous . . for the reason . . that 'similarity' with reference to corporate titles or trade-names is defined by law to be such resemblance as is likely to deceive or confuse the public, and . . where 'similarity' exists in fact, the primary geographical significance of the names involved is no excuse for confusion or deception and makes the 'similarity' no less obnoxious to the law. It is submitted that there may be greater resemblance between geographical or descriptive terms under certain circumstances, without 'similarity' existing; but that when 'similarity' does exist, . . infringement or unfair competition is established."

Ground 15 complains of the following charge: "I charge you

that geographical names are the exclusive property of no one, and, with the exception to which I shall refer in a moment, may be appropriated by any one without unfair competition resulting. The exception to this rule occurs when a geographical name has been used in connection with a particular business for so long a time that the buying public comes to understand that such a name means goods or products of that very trader and none other." The criticism is "that said charge was erroneous . . for the reason . . that movant's right to the exclusive use of its corporate title being composed in part of a geographical term was erroneously made to depend upon the acquisition of a secondary significance with respect to its goods or wares, rather than to its corporate or business identity; . . [and] such charge was . . confusing and misleading to the jury, in that it tended to lead them to erroneously conclude that likelihood of confusion between the goods of defendant and movant was a necessary consideration in their determination of the similarity of defendant's trade-name and movant's corporate title."

Ground 16 complains of the following charge: "I charge you that in detemining whether unfair competition exists, under the evidence in this case, you may apply the following test: The similarity in names must be such that purchasers of ordinary prudence, that is ordinary buyers, are misled into the belief that the goods and wares of the Jacksonville Paper Company trading as the Atlantic Paper Company are those of the Atlanta Paper Company." The criticism is "that said charge was erroneous . . for the reason . . that the issue of similarity between the trade-name of defendant and the corporate title of movant was thereby erroneously made to depend upon the likelihood of the goods and wares of defendant being confused with the goods and wares of movant, . . ' [and] that such charge was erroneous and injurious, . . because . . it was confusing to the jury, in that it tended to lead them into the erroneous conclusion that the similarity or dissimilarity of the dress and markings of defendant's wares to the dress and markings of movant's wares must be considered in determining whether or not defendant's trade-name was similar to the corporate title of movant."

Ground 17 complains of the following charge: "I charge you, gentlemen of the jury, to look to the evidence and see whether the

similarity of names is such as will mislead a buyer of ordinary intelligence. See whether or not the use of the name Atlantic Paper Company by the defendant results in its products passing as those of the plaintiff." The criticism is "that said charge was erroneous . . for the reason . . that it made the jury's determination of the similarity of defendant's trade-name and plaintiff's corporate title dependent 'upon the likelihood of defendant's goods being confused with the goods of movant, rather than the likelihood of one corporation being confused with the other."

Ground 18 complains of the following charge: "Was there any intention on the part of the defendant, Jacksonville Paper Company, in using the name of Atlantic Paper Company in operating its business at Savannah, Georgia, to compete with the Atlanta Paper Company by the use of a name so as to deceive the ordinary purchaser in the exercise of ordinary prudence and mislead such purchaser into purchasing its products under the impression that it was trading with the Atlanta Paper Company? Now, you should indicate in your answers the response to that question 'Yes,' if you find that it was the intention; you should indicate it. If you find it was not the intention, you should indicate that as to that question." The criticism is "that such charge was erroneous . . for the reason . . that it presented for the jury's consideration and determination an issue not raised by the pleadings; the sole issue being . . whether or not the trade-name 'Atlantic Paper Company' of defendant and the corporate name 'Atlanta Paper Company' of movant are similar, and . . the intention with which defendant adopted and used its name has no bearing upon the question of 'similarity,' [and] . . such charge was erroneous . . because . . it tended to confuse the jury and cause them to erroneously conclude that the defendant's said trade-name and movant's corporate title could not be 'similar,' unless the defendant in adopting and employing its said trade-name intended thereby to cause the public to think when dealing with the defendant that they were in fact dealing with the movant, . . [and] such charge stated a question presented to the court by defendant for the jury's determination. Questions for a special verdict were presented to the court by both parties, and none of the questions so presented were served upon

the other party, and no opportunity given either party to object to the presentation of such questions to the jury for special verdicts."

Ground 19, of the following charge: "The second question in this series of questions is: 'Has the product sold by the Atlanta Paper Company acquired any specific significance by the use of the name Atlanta?'" The criticsm is "that such charge was erroneous . . for the reason . . that it presented for the jury's consideration and determination an issue not raised by the pleadings; the sole issue being . . whether or not movant had, by reason of long and extensive use, become known as 'Atlanta Paper Company,' and thereby won for said name a secondary meaning as indicating movant exclusively; and whether or not defendant's trade-name, 'Atlantic Paper Company,' adopted long subsequent to movant's adoption of its said corporate title, was similar thereto, [and] . . the names involved in this suit as 'Atlanta Paper Company' and 'Atlantic Paper Company.' The defendant is alleged to have engaged in unfair competition with movant, by reason of its entry into the field, long occupied by movant, with a trade-name other than its true corporate name, the same being . . similar to the corporate name employed exclusively by movant for fifty years. That movant's prior long use of the name 'Atlanta Paper Company' gave to it the exclusive right to use that name was conceded by defendant, but it denied that the name 'Atlantic Paper Company,' which it had subsequently assumed, was similar thereto. The sole issue for the jury's determination was, then, the similarity or dissimiliarity of the names 'Atlanta Paper Company' and 'Atlantic Paper Company.' The names . . should have been compared and contrasted in toto, as it was the entire name 'Atlanta Paper Company' which was conceded to have come to indicate exclusively the movant. It was . . erroneous, and unsound as an abstract principle of law, for the court to direct the jury's consideration to the bare word 'Atlanta,' which word alone and in the abstract is primarily a geographical term, indicating the capital city of Georgia; [and] . . such charge was erroneous . . because . . it tended to confuse the jury and cause them to erroneously conclude that the products or wares of the movant must have acquired a specific significance by reason of the movant's

use of the name 'Atlanta,' before similarity could exist between defendant's trade-name and movant's corporate title, [and] . . such charge stated a question presented to the court by defendant for the jury's determination. Questions for a special verdict were presented to the court by both parties, and none of the questions so presented were served upon the other party, and no opportunity given either party to object to the presentation of such questions to the jury for special verdicts."

5. Grounds numbered 6 and 7 are merely elaborative of the general grounds of the motion. Applying to the pleadings and the evidence the principles hereinbefore stated, the evidence was sufficient to support the verdict, and the court did not err in refusing a new trial. The decree refusing an injunction was authorized by the verdict,. and the court did not err in rendering such decree. *Judgment affirmed. All the Justices concur.*

JENKINS, J., concurs in the judgment.

On rehearing HUTCHESON, J., dissents from the decision.