24969. MULTIPLE LISTING SERVICE, INC. v. METROPOLITAN MULTI-LIST, INC.

ARGUED DECEMBER 10, 1968—DECIDED JANUARY 23, 1969—
REHEARING DENIED FEBRUARY 6 AND FEBRUARY 20, 1969.

*Hatcher, Meyerson, Oxford & Irvin, Stanley P. Meyerson, Zachary, Hunter, Zachary & Bowden, John C. Hunter, Julius R. Lunsford,* for appellant.

*Thibadeau & Smith, Richard A. Thibadeau, Ernest Woodie Smith,* for appellee.

ALMAND, Presiding Justice. Multiple Listing Service, Inc. in its complaint against Metropolitan Multi-List, Inc., asserting its right to the exclusive use of the name, "Multiple Listing Service," and the letters, "MLS" in the metropolitan area of Atlanta, and in Fulton and DeKalb Counties, prayed that the defendant be temporarily and permanently enjoined from using the above name and letters in the operation of its business. Both corporations are composed of stockholders and members who are engaged in the business of real estate brokerage.

The alleged right to the exclusive use of such name and symbol was based on two grounds: (1) that it had registered such trade names in September, 1957 in Fulton County, and (2) that, in the language of the complaint, "the names, 'MLS' and, 'Multiple Listing Service' have each acquired by long use in connection with the plaintiff's business a secondary meaning which is understood by the public as designating the services and business of the plaintiff and the public has come to associate the trade name, 'MLS' and 'Multiple Listing Service' and the distinctive emblem combining both of said names as identifying exclusively the business and service of the plaintiff, and the use thereof by the defendant of the identical trade names will directly injure the business reputation of the plaintiff and will dilute the distinctive quality of the plaintiff's trade names and forms of advertising." (For a fuller statement of the complaint see the report of the case on its former appearance in this court, 223 Ga. 837).

On presentation of the complaint, an ex parte restraining order was granted. On the hearing of the prayer for an interlocutory injunction, the court, at the conclusion of the plaintiff's evidence, sustained the defendant's motion to dissolve the ex parte restraining order and deny the interlocutory order.

On appeal to this court, it appeared from the record that the defendant had not filed any response to the complaint or offered

any evidence. We held, "Under these facts and circumstances, the court erred in dissolving the temporary restraining order and in refusing to grant an interlocutory injunction pending a final trial." *Multiple Listing Service v. Metropolitan Multi-List,* 223 Ga. 837 (159 SE2d 52).

On the trial of the plaintiff's prayer for a permanent injunction, before a court and jury, a verdict was returned in favor of the defendant, and a decree entered thereon. An appeal from that decree brings the case here. The errors enumerated are that the verdict and judgment are contrary to the law and the evidence and that the evidence demanded a verdict in favor of the plaintiff.

■ It is insisted by the appellant that in view of the prior decision by this court that the evidence before the trial judge in the hearing for an interlocutory injunction demanded the grant of such relief, a new trial is demanded as a matter of law since the evidence presented by the plaintiff at both proceedings was the same. In our prior decision, we called attention to the fact that the case was heard solely on the pleadings and evidence of the plaintiff, and that the court abused its discretion not as a matter of law, but as a matter of evidence, in denying the interlocutory injunction. An interlocutory judgment of a trial judge refusing or granting an injunction, which is affirmed by this court, is not res judicata unless it was based solely upon a question of law. Where it is based upon both law and evidence, it is not binding at the final trial unless the proof is substantially the same as it was at the interlocutory hearing. *Collins v. Carr,* 116 Ga. 39 (42 SE 373).

■ Though the evidence on behalf of the appellant on the trial of the case was substantially the same as upon the interlocutory hearing, there is now also before us the evidence introduced by the appellee at the trial of the case before the court and the jury. The main and controlling issue as submitted by the trial court to the jury was: had the appellant by its prior use of the words, "Multiple Listing Service" and "MLS" acquired the exclusive right to use such trade names by reason of their secondary meaning insofar as the business of the appellant was concerned?

The instant case in many respects is similar to the case of *Atlanta Paper Co. v. Jacksonville Paper Co.*, 184 Ga. 205 (190 SE 777). There, the Atlanta Paper Co. sought to enjoin the defendant from trading under the name of "Atlantic Paper Co." Both companies were engaged in the business of selling paper products in the same territory. It was contended by the plaintiff that its corporate name had acquired a secondary meaning denoting that the products sold under that name were the products of the plaintiff. A temporary injunction was granted. On the trial before the court and jury, one of the special questions submitted to the jury was whether the trade name of the plaintiff had acquired a secondary meaning as to its products. The jury, on questions submitted, found in favor of the defendant. Notwithstanding the verdict, the plaintiff asked the court to grant an injunction. It was held that the evidence supported the verdict and that there was no error in the refusal to grant an injunction or to deny a new trial. It was there said that *Code* § 37-712 which provides, "Any attempt to encroach upon the business of a trader, or other person, by the use of similar trademarks, names, or devices, with the intention of deceiving and misleading the public, is a fraud for which equity will grant relief," must be borne in mind.

In the opinion, it was said: "It is also necessary to remember, in dealing with this case, that the general purpose of the law controlling trade names and unfair competition is the prevention of fraudulent interference with rights of the lawful holder of a trade name and protection of the public from imposition. Relief against unfair competition by the use of trade names really rests on the deceit or fraud which the later comer into the field is practicing upon the earlier comer and on the public. The principle on which courts of equity proceed in restraining the simulation of names is not that there is property acquired by one party in the name, but to prevent fraud and deception in dealing with the party charged with the simulation of a name used by another in a similar business or manufacture. Unfair competition is a form of unlawful business injury. It consists in passing off or attempting to pass off on the public the goods or business of one person as and for the goods or business of

another. It consists essentially in the conduct of a trade or business in such a manner that there is either an express or implied representation to that effect. In fact, it may be stated broadly that any conduct the nature and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for the goods or business of of another constitutes actionable unfair competition. The essence thereof consists in the sale of the goods of one manufacturer or vendor for those of another. It is the palming off by one of his goods as the goods of another, and nothing less than conduct tending to pass off one man's goods or business as the goods or business of another will constitute unfair competition. The basic principle of the law of unfair competition is that no one has a right to dress up his goods or business or otherwise represent the same in such manner as to deceive an intending purchaser and induce him to believe he is buying the goods of another, and that no one has a right to avail himself of another's favorable reputation in order to sell his own goods. The present tendency is to decide every case on the ground of unfair competition, by making the decision turn on whether or not the effect of what was done is to pass off the goods or business of one man as the goods or business of another. Unless it appears that there is or will probably be a deception of ordinary buyers and the general public into thinking that the goods or business of one is the business or goods of another, and thus bring about the sale of one man's goods as the goods of the other, the case is damnum absque injuria, for which no action lies." *Atlanta Paper Co. v. Jacksonville Paper Co.*, 184 Ga. 205, 212, supra.

In the instant case, there was conflicting testimony by witnesses for both parties as to whether the words, "Multiple Listing Service" and "MLS" had or had not acquired a secondary meaning. There was evidence that a majority of the real estate brokers who were members of either the appellant's or the appellee's listing service were members of the National Association of Real Estate Boards. It was further shown that said board, in 1945, designed a multiple listing emblem to be used nationally by all members of the board, and the design was in the form of a house with "MLS" and "Multiple Listing Service" thereon,

and that when the emblem was registered with the United States Patent Office in 1966, beside its registered emblem appeared the words "Multiple Listing Service—MLS." There was also evidence on behalf of the appellee that prior to the adoption of the emblem by the National Board, that realtors in the United States had been using Multiple Listing Service for 20-30 years, and that Multiple Listing Service Corporation had existed for several years in Columbus, Savannah and Macon, Ga. Multiple listing service was defined as being a group of real estate brokers who pool their listings for the purpose of being more efficient in selling houses. There was no evidence that anyone who transacted business with a real estate broker who was a member of the appellees, and who used the words "Multiple Listing Service" or "MLS" did so in the belief that he was dealing with a broker who was a member of the appellant's listing service, by reason of the use of said words.

There being a conflict in the evidence as to whether the words "Multiple Listing Service—MLS" had acquired a secondary meaning as would give the appellant the exclusive right to use them in the sale of real estate by the brokers who were members of appellant's association, it cannot be said that the evidence demanded a verdict in favor of the appellant. The verdict and decree were authorized by the evidence.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., who dissents.*