ORIGINAL APPALACHIAN ART-WORKS, INC., a Georgia Corporation, Plaintiff,

v.

The TOY LOFT, INC., a Georgia Corporation; Lawson Enterprises Unlimited, Inc., a Georgia Corporation; and A. David Lawson, an individual, Defendants.

Civ. A. No. C79–2325A.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 2, 1980.

---

Stanley F. Birch, Jr., Deal, Birch, Orr & Jarrard, Gainesville, Ga., William H. Needle, Newton, Hopkins & Ormsby, Atlanta, Ga., for plaintiff.

James C. Kesterson, Pitts & Kesterson, Knoxville, Tenn., W. Fred Orr, II, Orr & Edwards, Decatur, Ga., for defendants.

## ORDER

TIDWELL, District Judge.

The above-styled action is one for copyright infringement, unfair competition, injury to business reputation, deceptive trade practices, and a suit on an open account arising under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*, the Federal Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*, the statutes of the State of Georgia, and common law. This court's jurisdiction was invoked by the plaintiff under 28 U.S.C. §§ 1331 and 1338, 17 U.S.C. § 502, 15 U.S.C. § 1121, and *Ga.Code Ann.* § 24–113.1. The complaint requests injunctive relief, damages, court costs, and attorney's fees. The defendants have interposed counterclaims under 15 U.S.C. § 1125(a) and *Ga.Code Ann.* §§ 37–712, 106-115, and 106–701. An anti-trust counterclaim (designated Count VI) was voluntarily dismissed by the defendants.

A temporary restraining order which was issued by the court on December 21, 1979 was later dissolved in accordance with the terms of that order when the defendants posted a $10,000 bond pending final disposition of the action. Pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure, the trial of the case on the merits was consolidated with the hearing of plaintiff's application for a preliminary injunction on March 31—April 2, 1980. After considering the evidence and arguments of counsel, the court makes the following findings of fact and conclusions of law. Rule 52(a), Fed.R. Civ.P.

## FINDINGS OF FACT

Xavier Roberts, who is presently the president of the plaintiff corporation, has an extensive background in art, including soft sculpture. In 1976 and 1977, he was employed by the State of Georgia at Unicoi State Park, where he was a buyer for the park's craft shop. In connection with his

duties there, he became acquainted with Martha Nelson, a practicing artist whose work primarily involved soft sculpture dolls. Mr. Roberts decided to carry Ms. Nelson's dolls at the Unicoi craft shop, and at his suggestion, she exhibited her work at a craft show held at Unicoi State Park in February, 1977. Because of a dispute which occurred at the craft show, Ms. Nelson thereafter refused to sell any additional dolls through the Unicoi craft shop. In May of 1977, Mr. Roberts, with the assistance of Deborah Morehead, began producing and selling his own soft sculpture dolls through the Unicoi craft shop.

Between May, 1977 and the end of that year, Mr. Roberts and Ms. Morehead made and sold approximately 80 of their soft sculpture dolls. Although there is some dispute as to the exact numbers involved, it appears that up to one-half of the dolls sold had no copyright notice, while the remainder had a copyright notice affixed to paper tags pinned to the dolls' clothing. These early dolls, as exemplified by Plaintiff's Exhibits 18 and 19 (which two dolls were made in December, 1977) were experimental models differing substantially from the dolls that the plaintiff is presently manufacturing.

The type of doll that the plaintiff corporation presently manufactures and sells was first published, as that word is used in the Copyright Act, in February of 1978. All of plaintiff's dolls that have been produced subsequent to that date have had copyright notices attached to them, although notices on sewn-in tags were not used until late 1978. The plaintiff was incorporated in the fall of 1978, and on June 1, 1979 copyright registration number VA 35–804 was issued for plaintiff's dolls. The registration certificate lists Xavier Roberts as the "author" and Xavier Roberts and Original Appalachian Artworks, Inc. as the copyright claimants. Xavier Roberts has since assigned all of his interests in the copyright to the plaintiff corporation. Although it appears that Ms. Morehead "co-authored" plaintiff's dolls, this does not affect the posture of the present action vis-a-vis this plaintiff and these defendants.

The plaintiff's dolls, sold under the trade name "The Little People," have achieved considerable commercial success, in part due to a unique combination of marketing techniques, which include: treating the dolls as "babies" who are "adopted" rather than sold; providing the customer with a "birth certificate" and "Official Adoption Papers" which include an "oath of adoption" to be subscribed to by the buyer; individually naming each doll that is produced, and communicating this fact by means of a name tag affixed to each doll's clothing; sending the buyer a birthday card for his "little person" on the first anniversary of the date of sale; and signing each doll's derriere "Xavier" while advertising that the dolls are a "limited signed edition" (although this latter claim is somewhat suspect inasmuch as over 40,000 have been sold to date). The plaintiff corporation presently employs approximately 90 individuals, has had gross sales of around $800,000 since its inception, and has placed its products in over 800 retail outlets in 39 states and several foreign countries.

Defendant A. David Lawson first became aware of plaintiff's products when he saw them displayed for sale at Hartsfield International Airport in Atlanta in late 1978 or early 1979. Mr. Lawson operates a retail toy business located in Gatlinburg, Tennessee, and is the president of defendants The Toy Loft and Lawson Enterprises Unlimited, Inc. The defendants began selling the plaintiff's dolls at their retail outlet in May, 1979, and received written information from the plaintiff corporation suggesting the manner in which "The Little People" should be displayed and sold in order to maximize sales. The defendants also received copies of the birth certificates, adoption papers, and name tags heretofore mentioned, and defendant Lawson personally toured the plaintiff's manufacturing facilities in Cleveland, Georgia, where at his request he received detailed instructions on the plaintiff's stitching techniques. During the months of July and August, 1979, the plaintiff sold the defendants 120 dolls invoiced in the total amount of $5,447.00,

which amount has not been paid by the defendants to date.

Defendant Lawson first became acquainted with Martha Nelson's dolls in the summer of 1979, subsequent to his having purchased dolls from the plaintiff. Shortly thereafter, he and his wife began to make their own soft sculpture dolls, which were similar to those of the plaintiff. In November of 1979, the defendants began selling their dolls using marketing techniques similar to plaintiff's, including offering the dolls for "adoption," providing a "birth certificate," and signing the dolls' derrieres "Mama Stork" with a registration number. The defendants' dolls, which are called "The Love Me Babies," have copyright notices affixed by means of a sewn-in tag. The defendants have sold their dolls at The Toy Loft in Gatlinburg as well as in two department stores, Miller's in Knoxville, Tennessee and Davison's in Atlanta. (Davison's stopped carrying defendants' products before Christmas after being notified of the threat of the present suit; Miller's has apparently refused to place any further orders until the instant litigation has been terminated.) Defendants' gross profits on the sale of their dolls have been in the neighborhood of $17,500.00 since November, 1979.

Defendant Lawson testified that he specifically instructed his employees to distinguish "The Love Me Babies" from plaintiff's dolls in responding to any customer inquiries. Although this may be true, it constitutes an admission that he anticipated the possibility of confusion on the part of the public. There was also countervailing evidence presented by the plaintiff that defendant Lawson had intimated to a customer in Miller's Department Store that his dolls were the same as plaintiff's. In any event, the court finds that at least one instance of actual customer confusion occurred at Miller's Department Store due to the similarity of the parties' dolls and marketing techniques. Based upon this fact as well as the other evidence presented and the court's own examination of the dolls in question, the court concludes that there exists a substantial likelihood of confusion, mistake, or deception of purchasers as to source resulting from this similarity.

With regard to the plaintiff's dolls, the defendants' dolls, and the dolls created by Martha Nelson prior to February, 1978, the court makes the following observations and findings. Although the Martha Nelson dolls and the plaintiff's pre-1978 experimental models are somewhat similar, the Martha Nelson dolls and the plaintiff's dolls as they exist today (and as they have existed since February, 1978) are generally dissimilar in the following respects: facial expression (plaintiff's dolls look like babies while the Nelson dolls more resemble old people due to puckered chin caused by secondary stitching below mouth); shape of nose (plaintiff's dolls' noses go straight across while the Nelson dolls' noses have an inverted-Y shape); hands (fingers on the Nelson dolls are generally elongated while the fingers on plaintiff's dolls are shorter and more anatomically correct); buttocks (plaintiff's dolls are more anatomically correct due to presence of center seam); eyes (plaintiff's dolls' eyes are painted in high gloss paint with eyebrows as opposed to Nelson dolls having no eyebrows and eyes painted with flat-finish paint); plaintiff's dolls have simulated elbows while Nelson dolls do not; Nelson dolls have ears while plaintiff's dolls do not; Nelson dolls are not signed on their bottoms. With regard to the plaintiff's and defendants' dolls, the court finds that they are dissimilar in the following respects: defendants' dolls are larger, have more hair, have bigger eyes, have a "Love Me" heart on their chest, and have a rounder head; they are similar in nearly every other respect.

## CONCLUSIONS OF LAW

This court has jurisdiction of the action under 15 U.S.C. § 1121, 17 U.S.C. § 502, and 28 U.S.C. §§ 1331 and 1338.

### The Copyright Claim

■ In order for an applicant to obtain a valid copyright, he must show that the material in question is original. *Donald v. Zack Meyer's T. V. Sales and Service*, 426

F.2d 1027, 1029 (5th Cir. 1970), *cert. denied*, 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441 (1971). It has been said that "[a]ll that is needed to satisfy both the Constitution and the statute is that the 'author' contributed more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying.'" *Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99, 102–103 (2d Cir. 1951) (footnotes omitted); *accord, Donald v. Zack Meyer's T. V. Sales and Service, supra*.

■ In a copyright infringement action, while copying by the defendant is an element to be proven by the plaintiff, copying may also be an issue in establishing the validity of the plaintiff's copyright, since if the copyrighted work of the plaintiff was itself directly copied from a prior source, it lacks the requisite originality to support a copyright. *Alfred Bell & Co. v. Catalda Fine Arts, supra*. Due to the difficulty of obtaining direct evidence that one party copied another's work, copying is generally proven indirectly by showing access and substantial similarity. *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978). An additional consideration is that the Copyright Act provides: "In any judicial proceedings the certificate of a [copyright] registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Procedurally, then, the plaintiff has the burden of proving the validity of his copyright; by obtaining a copyright certificate the plaintiff is entitled to a prima facie presumption of copyright validity (and the burden shifts to the defendant to prove lack of originality); upon proof by the defendant of the plaintiff's access to similar prior works, the burden of proving originality shifts back to the plaintiff. *See M. M. Business Forms Corp. v. Uarco, Inc.*, 347 F.Supp. 419, 425 (S.D.Ohio 1972) *aff'd*, 472 F.2d 1137 (6th Cir. 1973). Once the plaintiff has established the validity of his copyright, he can prove infringement by showing that the person who composed the defendant's work had access to the copyrighted work and that the defendant's work is substantially similar to the plaintiff's. *Ferguson v. National Broadcasting Co., Inc., supra*.

■ It should be remembered, however, that the standards for originality and for substantial similarity are not interchangeable. As was stated in *Puddhu v. Buonamici Statuary, Inc.*, 450 F.2d 401, 402 (2d Cir. 1971):

. . . The tests for eligibility for copyright and avoidance of infringement are not the same. Originality sufficient for copyright protection exists if the "author" has introduced any element of novelty as contrasted with the material previously known to him. Introduction of a similar element by the copier of a copyrighted design will not avoid liability for infringement if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2 Cir. 1960).

*Accord, R. Dakin & Co. v. Charles Offset Co.*, 441 F.Supp. 434 (S.D.N.Y.1977); *cf. Universal Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir. 1975) ("But, substantial similarity to show that the original work has been copied is not the same as substantial similarity to prove infringement. As the *Arnstein* case points out [*Arnstein v. Porter*, 154 F.2d 464 (2d Cir. 1946)], dissection and expert testimony in the former setting are proper but are irrelevant when the issue turns to unlawful appropriation."), *cert. denied sub nom. Universal Athletic Sales Co. v. Pinchock*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975).

■ Turning to the case at bar, the court has concluded that the plaintiff's dolls exhibit the requisite degree of originality to support a valid copyright. As has been pointed out in the findings of fact, the court has found numerous differences between plaintiff's dolls and the prior works of Martha Nelson for which copyright registra-

tions were never obtained. In addition, the court finds that the plaintiff's dolls which are presently being produced were not injected into the public domain in 1977 when 80 dolls were sold without copyright notices or with allegedly defective notices, since the 1977 dolls were substantially different from the "Little People" sold during and after February, 1978. Insofar as the applicable provisions of the Copyright Act are concerned, the 1978 dolls represented an entirely new product, and for this reason, the new 1976 Copyright Act (effective January 1, 1978) is applicable in the present case. Moreover, the validity of the plaintiff's copyright is not affected by the fact that copyright notices on sewn-in tags were not used until late 1978, since statutorily correct copyright notices were used thereafter, and registration was effected within five years of the date of first publication. 17 U.S.C. § 405(a)(2).

■ The court has also concluded that the defendants. have infringed plaintiff's copyright since access has been proven and the court has found the defendants' dolls to be substantially similar to those of plaintiff. In reaching this conclusion, the court notes that plaintiff's copyright registration number VA 35–804 is sufficient to cover all of the differently-styled "Little People" that the plaintiff is presently manufacturing. *See* 37 CFR 202.3(b)(3). In accordance with the election of remedies made by plaintiff's attorneys at the hearing of the case, the plaintiff shall be awarded statutory damages for copyright infringement as provided by 17 U.S.C. § 504(c), and is entitled as well to injunctive relief under 17 U.S.C. § 502.

### The Unfair Competition Claims

■ In light of the fact that the defendants sold their "Love Me Babies" using substantially the same marketing techniques and "trade dress" that had previously come to be associated with plaintiff's products, and actual as well as a likelihood of customer confusion was caused thereby, the court further finds that the plaintiff is entitled to relief for defendants' violation of 15 U.S.C. § 1125(a) and unfair competi-

tion. *See Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474 (5th Cir. 1974); *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482 (5th Cir. 1971); *Atlanta Paper Co. v. Jacksonville Paper Co.*, 184 Ga. 205, 190 S.E. 777 (1937). Although the court declines to enter a judgment for damages on these claims, appropriate injunctive relief will be granted.

### The Open Account and Defendants' Counterclaims

■ At the hearing of the action, the defendants took the position that they disputed neither the amount due on the open account nor the fact of non-payment. They asserted, however, that payment had been withheld as a set-off towards their various unfair competition counterclaims brought against the plaintiff. The court finds that the actions taken by plaintiff and its agents which are complained of, including notifying retailers and the public that defendants' goods were infringing copies of copyrighted articles, were lawful and good-faith efforts to protect a valid copyright. Accordingly, the court finds for the plaintiff on both the open account and all of defendants' counterclaims.

### ORDER AND JUDGMENT

#### 1.

It is hereby ordered that the plaintiff is entitled to a judgment for copyright infringement in the amount of $3000.00 in accordance with the provisions of 17 U.S.C. § 504(c), as well as $10,000.00 attorney's fees under 17 U.S.C. § 505. The plaintiff is also entitled to a judgment in the amount of $5,447.00 on its open account claim and applicable court costs.

#### 2.

It is further ordered that defendant A. David Lawson and defendants The Toy Loft, Inc. and Lawson Enterprises Unlimited, Inc., their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with the defendants be, and hereby are, permanently enjoined from:

(a) Further violating any of the exclusive rights of plaintiff, as copyright owner, in plaintiff's soft sculpture dolls, including the reproduction, preparation, and distribution of any and all of defendants' infringing soft sculpture dolls, including its "Mama Stork" "Love Me Babies"; and

(b) Simulating the trade dress of plaintiff relating to the "adoption" of soft sculpture dolls, including but not limited to the use of an "adoption center," a "birth certificate," "adoption papers," an "adoption oath," or any other variation or facsimile thereof which is likely to cause confusion in the minds of the public with plaintiff's trade dress, advertising materials, and marketing and promotional techniques, in connection with the manufacture, distribution, advertising, or sale of defendants' soft sculpture dolls; and performing any other act likely to confuse the public into believing that defendants' dolls emanate from plaintiff or that defendants are in any way connected, associated, sponsored, or affiliated with or sanctioned or approved by plaintiff.