McGARRY v. MILNE.

TRADE-MARKS AND TRADE NAMES—NAMES—CONFUSION—RIGHT TO ENJOIN USE OF TRADE NAME.

> Where plaintiffs purchased a drayage and cartage business, including the good will and the right to use the trade name "Milne Brothers" in connection therewith, a showing that the sons of one of the original partners, who had been conducting a similar business under the trade name of "R. G. Milne & Sons," had recently adopted the trade name of "Milne Brothers," and that this had led to confusion, *held*, to entitle plaintiffs to an injunction restraining defendants from using said trade name.

Appeal from Saginaw; Snow (Ernest A.), J. Submitted January 17, 1924. (Docket No. 87.) Decided April 10, 1924.

Bill by John McGarry and Kirk Williams, copartners

On right of members of organization to protection in use of name which their efforts have made valuable, see note in 28 L. R. A. (N. S.) 458.

as Milne Brothers, against Alexander S. Milne and another to enjoin the use of a trade name.    Defendants filed a cross-bill asking affirmative relief.    From a decree for plaintiffs, defendants appeal.    Affirmed.

*Mark T. Davis*, for plaintiffs.

*Hugo E. Braun*, for defendants.

MOORE, J.    This case was tried in open court.    The chancellor who heard the case filed a written opinion from which we quote as follows:

"The facts in this case, which are either without dispute, or are easily ascertainable from the evidence that has been presented to the court's consideration, are as follows:

"A great number of years, possibly 35 or 40, R. G. Milne and George Milne, brothers, were engaged in the drayage and cartage business, which afterwards developed into van and moving business, and they did business under the name of Milne Brothers. Evidence shows that they always had a street office on Franklin street.    That in years gone by the office was on the north side of Genesee street, and on the east side of Franklin street, adjacent to Heavenrich building.    And that afterwards this office was moved across the street—across Genesee street, and still continued on Franklin street.    That after they left the Heavenrich building, they moved on South Franklin street, where they had an office for a number of years.    And at about twenty years ago, one of the brothers, R. G. Milne, sold his interest in the business to his brother George.    And he also sold him the right to do business under the name of Milne Brothers. And George Milne continued to carry on his general business that they had been engaged in for many years, under the name of Milne Brothers.    He continued to occupy the same office that had been occupied by Milne Brothers during its existence.    Mr. R. G. Milne, who was once one of the partners in this firm after he had sold to his brother, established a similar business under the name of R. G. Milne & Sons.    And he continued that business until very recently, when he

disposed of his interest to his two sons, Al and Harry Milne.

"George Milne died about 8 or 10 years ago, and after his death his widow conducted the business of Milne Brothers, and occupied the office and attended to the business and carried on the general business under the firm name of Milne Brothers, until about two and one-half or three years ago, when she sold the business, together with the name and the right to carry on the business of Milne Brothers, to Mr. McGarry and Mr. Williams, the plaintiffs in this case.   McGarry & Williams immediately upon purchasing the business, made compliance with the statute, and filed with the county clerk a statement in writing, sworn to, saying that they had assumed the name of Milne Brothers, and doing business under Milne Brothers' name, and giving the names of the persons constituting the firm, that they continued doing business as Milne Brothers, from that time until the present time.

"Then R. G. Milne sold out to his two sons, Al and Harry, and they took over the business, and Al and Harry changed the name of their business from R. G. Milne & Sons to 'Milne Brothers.'   And they went so far as to letter their trucks and moving vans as 'Milne Brothers, Al & Harry.'   They filed a statement in the county clerk's office that they were co-partners doing business under the name of Milne Brothers, claiming they had a right to do that, because that was their natural name, and that it was not in conflict with anybody's right.

"These two businesses are exactly similar, the business consisting of cartage and truckage with trucks and moving vans, hauling and carrying freight, and household goods and doing general cartage business, over the entire State of Michigan, particularly in and about the city of Saginaw.

"The court is unable to see why Al and Harry should have attempted to adopt the name of Milne Brothers, if it were not for the purpose of deceiving the public as to who constituted the firm of Milne Brothers.   They had been doing business for a number of years under the name of R. G. Milne & Sons.   The fact that their father had retired from the business did not change the situation any.   There was no reason why they should not have continued under the

name of R. G. Milne & Sons.    And, as I say, the court
is unable to see any reason why they should attempt
to adopt the name of Milne Brothers if they did not
have in mind a confusion of the name, a confusion
of the business, and an attempt upon their part to
secure some of the business which Milne Brothers
naturally, by the use of the name in business for those
years, would have.

"Now, the facts testified to here are that R. G. Milne
parted with the right to use the name 'Milne Brothers'
years ago, when he sold it to his brother George.    The
widow of George had a perfect right to use the name
'Milne Brothers' in the conduct of the business.    Not
only did she use that name but the right to use it
was recognized by R. G. Milne, and he permitted her
to use it, during the seven or eight years that she ran
this business before she sold out to McGarry &
Williams, and he did business those years under the
name of R. G. Milne & Sons.    The names were so
similar that they led to confusion.    Both parties ad-
mit there was confusion in the mails of those parties,
on account of a similarity of those names.    There is
no question but that business intended for one firm was
secured by the other.    I do not imagine there was
any particular effort on the part of either one to find
out for sure whether an order was for one or the
other.    It looks as though either of them would take
a job if they could get it.    If you are going to permit
Milne Brothers, because they are brothers—Harry and
Al—to assume the name of Milne Brothers, where will
the confusion end?    These men would be in conflict
all the time.    Sufficient evidence has been introduced
to show that it is impossible for a person to get the
one he tries to get.    Whether there was any actual
fraud upon the part of Al and Harry to get the
business of Milne Brothers, makes no difference.    But
the mere fact that they are both in the telephone book
as Milne Brothers leads to actual confusion.    I do
not know any of these men, I do not know Al or
Harry, or these other men, but I do know the name
Milne Brothers.    If I needed a moving van and would
look in the directory I would be as liable to call one
as the other.    There is no doubt but what endless
confusion will arise if they continue.

"As a matter of strict people's rights, these plain-

tiffs are entitled to use this name. They bought the right to use this name. It was part of the assets of Mrs. Milne that she sold to them. They complied with the law in every respect. They immediately filed a statement that they were doing business under the assumed name of Milne Brothers. R. G. Milne & Sons were then doing business as R. G. Milne & Sons, directly across the street. They knew that. They bought this business with the understanding that R. G. Milne & Sons was across the road doing business, with the idea that R. G. Milne & Sons were going to use that name and they were to use the name 'Milne Brothers.' If they had understood anybody could use the name 'Milne Brothers' this business would not have been worth as much to them as it was when they bought it.

"There is not the slightest question in the court's mind but what these defendants should be restrained from using the name 'Milne Brothers.' There is no reason why they should use it at all. They have a business worked up under the name of R. G. Milne & Sons, and they are attempting to use the name 'Milne Brothers,' and I cannot see it any other way than an attempt, clearly, to add further confusion to the already existing confusion by using the name that these plaintiffs are entitled to. The business of each is exactly the same. Their places of business are directly across the road. To permit the name of Milne Brothers to be used by each of these people would certainly be to the injury of both of them. I cannot see any advantage the defendants in this case would gain by it, excepting to create a feeling of ill-will between these people and create further confusion.

"The plaintiffs have not any right to use the firm name 'McGarry & Williams, Successors to Milne Bros.' If they are going to do business as Milne Brothers, they must do it as Milne Brothers.

"The decree in this case may be in favor of the plaintiffs, restraining the defendants from the use of the name 'Milne Brothers.' It may also provide that McGarry & Williams shall immediately remove its sign, and any advertising that they may have at the present time with their names as 'Successors to Milne Brothers.'

"In that connection the defendants claim that they are doing business as Milne Brothers. Plaintiffs may have a decree in accordance with the opinion."

A decree was filed in accordance with the opinion. The case is brought into this court by appeal.

The appellants claim plaintiffs at the time of the commencement of the suit were not doing business as Milne Brothers; that the adoption of the name "Milne Brothers" by the defendants has not led to confusion, that they were known to the trade as Milne Brothers long before they adopted that name, that the defendants made lawful use of the name "Milne Brothers" and by causing their first names, Al and Harry, to appear in connection therewith honestly distinguished their firm from any other.

Defendants' most important claim is, and we quote from the brief:

"The name 'Milne Brothers' as applied to the defendants is an honest application of a personal surname to two men who are brothers. 'Brothers' is descriptive, and it is elementary that a descriptive word is not susceptible of exclusive appropriation by any person. And the name 'Milne' is a personal surname, also incapable of exclusive appropriation. Conceding that plaintiffs have a right to use this name, it is our position that they do not have the right to monopolize the name as in the case of a trade-mark, particularly where they have not themselves been using the name; this is not a trade-mark case. * * *

"It is the claim and position of the defendants in this case that they have a legal right to use their own name in their own business as long as that use is fair and honest; and second, that mere use of the name by them does not even make out a *prima facie* case of unfair competition against them. In support of this position we cite the following cases: *Williams* v. *Farrand*, 88 Mich. 473 (14 L. R. A. 161)," and other authorities.

There is not very much conflict in the testimony, but where there is a conflict the statements of fact made by

the chancellor in the opinion we have quoted is sustained by the great weight of the testimony.  In. addition to what was said by the chancellor, it should be stated that in August, 1902, Robert Milne took the initiative about a sale of the business of Milne Brothers, including the good will, and that George Milne accepted his offer for his share of the business and paid him therefor $1,507.40.  It should also be stated that plaintiffs bought the business, including the good will, from Mrs. Mary Milne, for $5,500 in November, 1919, and from 1902 the business was conducted in the name of Milne Brothers, by the predecessors of the plaintiffs, until it was taken over by the plaintiffs, and they have continued to conduct it in that name.  It should also be stated that the plaintiffs, within a few days after their purchase, filed the proper statement with the county clerk that they were doing business under the assumed name of Milne Brothers.  It was not until shortly before this bill of complaint was filed that defendants attempted to do business as Milne Brothers.

The questions involved are not new in this State,. Some of the cases are *Williams* v. *Farrand,* 88 Mich. 473 (14 L. R. A. 161) ; *Penberthy Injector Co.* v. *Lee,* 120 Mich. 174; *Gordon Hollow Blast Grate Co.* v. *Gordon,* 142 Mich. 488, 490; *Lamb Knit-Goods Co.* v. *Glove & Mitten Co.,* 120 Mich. 159 (44 L. R. A. 841) ; *Finney's Orchestra* v. *Finney's Famous Orchestra,* 161 Mich. 289 (28 L. R. A. [N. S.] 458) ; *People's Outfitting Co.* v. *Outlet Co.,* 170 Mich. 398.

The decree of the court below is affirmed, with costs to the appellees.

CLARK, C. J., and BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.    McDONALD, J., did not sit.