GOLDBERG *et al. v.* GOLDBERG *et al.*

Under the pleadings and evidence in the case the court did not err in granting the interlocutory injunction.

No. 4492. FEBRUARY 18, 1925.

Injunction. Before Judge Franklin. Richmond superior court. July 23, 1924.

Samuel Goldberg and Frank Goldberg brought their petition against Abraham Goldberg, Hyman Goldberg, and Samuel Dolinsky, praying that these defendants be enjoined from continuing to use the name "Goldberg's," as shown in a certain sign appearing as an exhibit to their petition and upon delivery-boxes, bags, and stationery, or any other form of advertising. There was no prayer for either accounting or damages, nor was any specific sum of damages alleged; and upon hearing the defendants were enjoined as prayed.

. . The petition alleged, that the plaintiffs had been ever since 1915 conducting a business in the City of Augusta at 1054 Broad Street, consisting of ladies' ready-to-wear, under the name and style of "Goldberg's" which they used in all of their business, which was extensive in the States of Georgia and South Carolina, and which, by reason of efficiency and integrity in its conduct and by wide, constant, and expensive advertising, was of great commercial value; that the defendants recently opened a business similar to that of petitioners, and located at 1138 Broad Street; that the defendants had adopted the trade-name and sign "Goldberg's," similar in name and design to that of petitioners; that the characteristics of the two signs are illustrated in exhibits attached to the petition; that the use of the name "Goldberg's" by the defendants deceives and misleads the public and is calculated to injure the business of petitioners and to enable defendants to sell their goods on the reputation of the goods of petitioners; that the name "Goldberg's," used by the defendants, did not represent the names of all the partners, inasmuch as the name Dolinsky, who was one of the partners, was

omitted, and the name of Goldberg only was employed in their sign; that the similarity in the script of the sign and of the scroll underneath the name "Goldberg's" thereon, in which scroll the · defendants wrote the words, "Department Store," was adopted by the defendants in imitation of the sign used many years by petitioners, with the intent to deceive the public; that the acts of the defendants in using the name "Goldberg's" was such a colorable imitation of the name used by petitioners that the general public in the exercise of reasonable care might believe, and in many instances have believed, that they were dealing with petitioners, when in point of fact they were dealing with defendants; that these acts of the defendants in the use of said name "Goldberg's" are an infringement of petitioners' right to use said name; that it was done with an intent to make an impression upon the general public that petitioners and defendants were one and the same, with the intent to mislead and deceive the public; that this similarity of names had caused confusion in the mails; that letters intended for defendants had been delivered by the post-office authorities to petitioners; that the public at large is liable to be, and is, deceived by the similarity of the names; that patrons of petitioners had gone to defendants' store thinking it was a part of the business conducted by the petitioners, by reason of which much injury had been done petitioners; that the conduct of business by the defendants under the name "Goldberg's" on the block of Broad Street next to the block in which petitioners conduct their business had caused irreparable damage, and no adequate remedy is afforded petitioners in a suit at law; and that, wherever or however used by defendants, its use is calculated to, and does, mislead and deceive the public.

To this petition the defendants filed their sworn answer, in which they set forth that the real name of the petitioners was not Goldberg but Lifschitz; that petitioners were Russian citizens and subjects who had never been naturalized, and who changed their name without the authority of law and adopted that of Goldberg, which was the true surname of two of the defendants, and which they had used and were using in their partnership with Samuel Dolinsky; that they established their business about three years ago in Augusta, and were conducting there on the principal business street a department store, in which much the greater part of their business consisted in miscellaneous merchandise such as is usually

carried in department stores; that one department of their business consisted in the line of goods generally known as ladies' ready-to-wear; that the goods sold by petitioners and themselves were such goods only as are purchased in the open markets of the country, and are without any particular mark or brand or exclusive proprietary right; that none of the goods dealt in by either themselves or petitioners were manufactured or in any way wrought upon by either, but they were offered for sale as bought in the open markets on their merits and the appeal they made to the taste or pockets of customers. They further set forth by exhibits photographic reproductions of the signs actually employed by them, and from these they insist it appears that the script of their sign "Goldberg's" was different from the script of the sign "Goldberg's" employed by petitioners; that the scroll underneath the word "Goldberg's" in their sign conspicuously bore the legend "Department Store" and underneath that the further sign "Peter's Shoes;" that these signs were attached to the wall over the front door of their store and projected out over the door and the sidewalk; that another sign immediately over the front door of their store and flat against the wall bore the name "Goldberg's," and in addition, at either end of the sign, was the street number of their place of business, and surrounding this in conspicuous letters were the words "Men's Ready-To-Wear," and on the other end of the latter sign and surrounding the number of the store "Ladies' Ready-To-Wear."

They further described their place of business as near the center of the block and having no exposure to the street or sidewalk, except the two display windows on either side of the front door, which windows were in line with the front wall of the building; and on the contrary they alleged that petitioners' store was a corner store, on the corner of Broad and Kollock Streets, with its entire front on Broad Street, composed of show-windows and a considerable space on Kollock Street with glass fronts, making a continuation of display on that street; that Kollock Street separated the block in which petitioners did business from the block in which defendants conducted their business; that, in addition to these alleged conspicuous physical distinctions between both location and appearance of their respective places of business, the petitioners had suspended perpendicularly and in front of their store and directly above the sign depicted in one of the exhibits attached to their peti-

tion a large and conspicuous electric sign about ten feet in height, set with opaque vitreous letters spelling the name "Goldberg's" from the top, these letters being both large and raised above the surface of the sign, and plainly exhibiting by day, by reason of the color and material of which the letters are composed, the name "Goldberg's" on both sides of said sign, and by night exhibiting the name by electric illumination of the same letters equally visible on both sides of the sign; that the bottom of this perpendicular diurnal and nocturnal sign was the large expanded base bearing the legend "Ladies Outfitters," so that, contrasted one with the other, the respective signs of the parties bore conspicuously obvious designations of different places of business and different characters of business. Defendants denied that the sign used by them was adopted and used with fraudulent intent to deceive and mislead the public into the belief that their place of business was that of petitioners, or that it was their purpose to sell their goods as those of petitioners, or that the use of their own name was an infringement of any right of the petitioners to the use of said name, or that they had practiced any fraud upon customers with respect to the identity of their store or business or goods.

The plaintiffs introduced testimony, and the defendants rested on their sworn answer and the photographic reproduction of their own and plaintiffs' signs which appear in the record. After the hearing the court passed the following order: "Upon consideration of the law and undisputed testimony, it appears that the plaintiffs are entitled to the relief sought. Ordered that defendants be and are hereby temporarily restrained from using in any manner in the course of business the trade-name "Goldberg's" within the limits of the City of Augusta." To this judgment the defendants excepted.

*S. H. Myers* and *Callaway & Howard,* for plaintiffs in error.

*C. H. & R. S. Cohen* and *H. C. Hammond,* contra.

BECK, P. J. (After stating the foregoing facts.) Under the evidence in this case and the deductions which the trial judge was authorized to draw from it, the judgment of the court below must be affirmed. It is unnecessary to discuss here the principles underlying this decision. In cases cited below the questions involved have been discussed in decisions by this court and other courts of this country. A full discussion of one of the main questions

underlying the case will be found in the decision in the case of *Saunders System* v. *Drive It Yourself Co.,* 158 *Ga.* 1 (123 S. E. 132), where the writer of the opinion, Mr. Justice Hines, fully discussed the questions presented by the record in that case. That decision and the authorities there cited render a discussion of the law involved in this case unnecessary. But in addition to that case special reference may also be made to 38 Cyc. 769-773, 807 et seq., 813, and the cases referred to in support of the text. See also the following: Howe Scale Co. *v.* Wyckoff, 198 U. S. 118 (25 Sup. Ct. 609, 49 L. ed. 972) ; Reddaway *v.* Banham, A. C. 199, 65 L. J. Q. B. 381; Godillot *v.* Am. Grocery Co., 71 Fed. 873 (4) ; *Whitley Grocery Co.* v. *McCaw Mfg. Co.,* 105 *Ga.* 839 (32 S. E. 113) ; Bates Numbering Mach. Co. *v.* Bates Mfg. Co., 178 Fed. 681 (102 C. C. A. 181) ; Van Houten *v.* Hooten Cocoa, 130 Fed. 600; Bissell Chilled Plow Works *v.* Bissell Plow Co., 121 Fed. 366; Samuels *v.* Spitzer, 177 Mass. 226 (58 N. E. 693) ; Singer Mfg. Co. *v.* June Mfg. Co., 163 U. S. 169 (16 Sup. Ct. 1002, 41 L. ed. 118).

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Hill, J., dissenting.*

RUSSELL, C. J. I am unable to concur in the conclusion reached by my associates in this case. I think the ruling and judgment in the case at bar is controlled by the decision of the court in *Carter* v. *Carter Electric Co.,* 156 *Ga.* 297 (119 S. E. 737), for that was a case dealing with the use of one's own name; whereas the case of *Saunders System* v. *Drive It Yourself Co.,* 158 *Ga.* 1 (supra), has no reference to and does not attempt to deal with the question of one's use of his own name. This is recognized, because it is pointed out in the opinion that there was a distinction between the doctrine of the authorities cited as to the use of a trade-name not involving the use of one's own name and cases in which the use of one's own name is involved. Judge Hines, delivering the opinion of the court, very properly ruled that "there is nothing to the contrary in *Carter* v. *Carter Electric Co.* [supra], in which the use of one's own name was involved." In the other case cited, the trial judge's action in enjoining the defendants from using the words "Drive It Yourself" and the oval trade-mark design employed by them on their letter-heads, advertisements, stationery, and signs on their place of business, or as a part of their name was, as I think, properly affirmed; and his action in restricting the injunction so as to in-

clude only the uses just set forth was, I think, very properly reversed. As said in the opinion, "if the defendants were wrong-fully using the trade-name of the plaintiff they should be enjoined from its use in toto, and not only partially. They certainly should not be permitted to place its trade-name over the front of their building, whether in or out of the oval referred to. The defendants should have been enjoined from using the trade-name of the plaintiff in all ways."

The *Drive It Yourself* case expressly excludes such a case as that now sub judice, not only by its reference to the *Carter* case, supra, in which it was distinctly held that every man has the right to use his own name for any honest purpose and that the surname of another is not subject to exclusive appropriation by any one al-though he may have the same surname. The *Drive It Yourself* case was one where both parties were trying to use those three words as a means of promoting their business; and the question dealt with in the case, and upon which the decision turned, was whether words were merely descriptive of the kind and character of the business and therefore could not be exclusively appropriated, or whether such a secondary meaning had attached to the words "Drive It Yourself" in behalf of the company first using that name in the City of Atlanta in the particular business in which it was engaged as that by such use the defendant brought its business into unfair competition with the prior user of the term "Drive It Yourself." To show that this court, in passing upon the question, recognized that it was dealing only with a case in which unfair com-petition appeared from the use of words which were entirely dis-connected from the use of one's own name, Judge Hines, after pointing out that geographical names are not subject to exclusive appropriation as trade-names (*Rome Machine &c. Co.* v. *Davis Foundry*, 135 *Ga.* 17, 68 S. E. 800), proceeded to say: "Whether the name, 'Drive It Yourself,' is composed of mere descriptive words, and for this reason is incapable of exclusive appropriation, we need not decide in the present case. While generic names, geographical names, and names composed of words which are merely descriptive are incapable of exclusive appropriation, words or names which have a primary meaning of their own, such as words descriptive of the goods, service, or place where they are made, or the name of the maker, may nevertheless, by a wrong use in con-

nection with the business of the particular trade, come to be understood by the public as designating the goods, service, or business of a particular trader. This is what is known as the doctrine of second-ary meaning, and is the origin of the law of unfair competition, as distinguished from technical trade-marks or trade-names." It will be observed that in this ruling no reference whatever is made to any case involving the use by one of the surname of another. And the doctrine of secondary meaning was applied to the specific service of business then under consideration; that is, the hiring of automobiles to persons to drive for themselves. That case turned upon the principle just stated, following a prior ruling in the first division of the opinion that "the court below properly enjoined the defendant from using the corporate or trade-name of the plaintiff, if either were capable of exclusive appropriation by the plaintiff." In that case there was no question of using the individual surname of any one. Both parties to that cause were corporations.

In the case at bar the only question is whether there can be an exclusive appropriation of the name Goldberg by either one of the two sets of Goldbergs, each of whom claim that to be their name. In the *Carter* case we held that there could not be an exclusive appropriation of the name Carter as against the use by another Carter of his name in any legitimate way, although the second Carter proposed to carry on identically the same business under his name as that in which the other Carter was already engaged. We held, of course, that any dishonest or fraudulent practice on the part of the second Carter, by which he should attempt to palm off goods made by his corporation as the goods of the former Carter corporation, would be illegal and subject to injunction; but that (unlike the use of a mere descriptive name or a name to which a secondary meaning had attached) a common surname could not in first instance be appropriated exclusively by either one of two or more persons entitled to the same surname. An examination of the photographs in the record in this case convinces me that no man of ordinary intelligence could mistake the place of business of the two Goldbergs at 1138 Broad Street, Augusta, Ga., with that of the two Goldbergs on the corner of the street at No. 1054 Broad Street. Except that the Goldbergs at 1138 carry as a part of their stock some ladies' ready-to-wear, their stock of goods is entirely different from that of the Goldbergs of 1054 Broad Street, who are

solely ladies' outfitters—a term which implies that they cater only to ladies' trade and are prepared to furnish an entire outfit for a lady from the shoes on her feet to the hat on her head.   On the other hand, the sign over the Goldbergs at 1138 Broad Street reads, "Department Store," the sign over the street carries the same legend, and their stock of goods is of every variety of merchandise for men as well as women, and for boys as well as for girls. This case, unlike the general case of unfair competition, does not relate to a single article made by either party where one of the parties may deceive the public by inducing the belief that he is selling the goods of another which are in fact better than those which he himself makes; for, according to the uncontradicted testimony, the goods sold by both sets of the Goldbergs are in general use and can be purchased by any merchant or others from numberless dealers.

In this case while for myself, following the rule so fully supported in the *Carter* case, I shall adhere to the doctrine that there can be no competition as between two persons holding the same name, so as to allow either the exclusive use of the common name as against the other, still if the use of the name Goldberg for purpose of carrying on a dry-goods business in the city of Augusta must be awarded exclusively, I am constrained upon principle to differ from my colleagues as to the Goldbergs to whom this preference should be given.   I agree that any man may change his name.   I agree that this may be done even without pursuing the proceeding in the manner provided in our code of laws.   But any man may justly feel an honorable pride in the name his father bore and which had been handed down in the generations from sire to son.   This justifiable feeling makes the old family name a priceless birthright, the value of which increases as the years go by.   Goldberg may not be a great name as names go.   I have never investigated books of heraldry with reference to the family of Goldberg.   But the Goldbergs of 1138 Broad Street were born to a Goldberg; they were born Goldbergs.   The name of Goldberg was theirs by inheritance. It is theirs whether the heritage is one of honor or of shame.   Under the law they are entitled to the use of their own name.   The Goldbergs of 1054 Broad Street, according to their own admission, have taken the name of Goldberg as a matter of convenience.   As I have said, this they have a right to do, but certainly they can have

no family pride or business reputation honestly flowing to them from the Goldbergs of the past, because they must make the Goldbergs of the future to carry on their initial work. It may be, as explained by one of the witnesses, that the change from Lifschitz to the name of Goldberg justified the abandonment by the plaintiffs of their ancestral patronymic, upon the ground that "the name of Lifschitz is a misfit in the English language," but I can not, for this reason only, follow my brethren in conferring upon Jacob the birthright of Esau.